PARASTU SHARIFI
5 WINCHESTER DR.
EAST WINDSOR, NJ 08520
(619) 748-8624

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PARASTU SHARIFI, individually | ) | |
| Plaintiff | ) | |
| -V- | ) | Case No.: |
| AMERICAN RED CROSS, | ) | Civil Action |
| HEALTH PROFESSIONAL & ALLIED | ) | |
| EMPLOYEES | ) | **DEMAND FOR JURY TRIAL** |
| a/k/a LABOR UNION Local 5103, | ) | |
| Hammad Khan, Brian Carey, Lisa Scaramuzzo | ) | |
| Gabe Encarnacion | ) | |
| Defendants | ) | |

**PLAINTIFF ORIGINAL COMPLAINTS FOR DAMAGES**

1. Violation of Fair Labor Standards Act (FLSA), as codified, 29 U.S.C. §§ 201, and relevant State Law, 34 Pa. Code§ 231.1 (b);
2. Intentional Discrimination and Wrongful Discharge in Violation of Title VII of the Civil Rights Act of 1964, and in violation of Title 29 CFR § 1607.11
3. Invasion of Privacy in Violation of Federal Wiretapping Act, codified by 18 U.S. Code § 2511, and Relevant State Law, as codified, Title 18, Chapter 57, subchapter B 5703;
4. Intentional and Negligent Infliction of Emotional Distress;

Plaintiff representing herself as a *Pro Se*, and it should be noted that English is her second Language for the purpose of grammar, choice of words and writing style.

Plaintiff PARASTU SHARIFI("SHARIFI' OR "Plaintiff") charges and alleges as follows:

## THE PARTIES

1. Plaintiff **SHARIFI** is an individual who is a resident of Mercer County in the State of New Jersey. At all material times, Plaintiff was the employee of Defendant AMERICAN RED CROSS, (herein referred to "ARC"), a national humanitarian organization, in the Penn-Jersey region as a MOBILE PHLEBOTOMIST, and an union member of HEALTH PROFESSIONAL AND ALLIED known as Union Local 5103.

2. Defendant **American Red Cross** conducts and manages their business through their Regional Headquarter office located at 700 Spring Garden Street, Philadelphia, PA 19123, and all individual Defendants in this case are employed by American Red Cross in different positions as follows:
Hammad Khan as a District manager- Brian Carey as a Supervisor- Lisa Scarammuzo as a Mobile Phlebotomist/ Vice President of Union Representative- Gabe Encarnacion as another Supervisor.

3. The other Defendant, the **Health Professionals and Allied Employees**, AFT, AFL/CIO aka the "**UNION Local 5103**", conduct their business from 110 Kinderkamack Road, Emerson, NJ 07630 .

4. The true name and capacities of the defendants are known to Plaintiff from their employment status and the Labor Union contract with ARC dated on 2018, who therefore sues these defendants by such names.

5. Plaintiff is informed and believes, and thereon alleges, that Defendants are each responsible in some manner for one or more of the events and happening that proximately caused the injuries and damages hereinafter alleged, and to

otherwise consciously and/ or recklessly act in derogation of Plaintiff's rights, and the trust reposed by Plaintiff in each of said Defendants, said acts being negligently and/ or intentionally inflicted. Said conspiracy, and Defendants' concerted actions, were such that, to Plaintiff's information and belief, and to all appearances, Defendants represented a unified body so that the actions of one defendant was accomplished in concert with, and with knowledge , ratification, authorization and approval of each and every other defendant.

6. Plaintiff is informed and believes, and thereon alleges, that each and every defendant named in this Complaint is, and at all times mentioned herein was, the agent, servant, alter ego, and/or employee of each of the other defendants and that each defendant was acting within the course of scope of his, his or its authority as the agent, servant and/or employee of each of the other defendants. Consequently, each and every defendant is jointly and severally liable to Plaintiff for the damages sustained as a proximate result of their conducts.

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S. Code § 1391(b)(2), the HONORABLE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA has jurisdiction over this action since Plaintiff lives in the State of New Jersey, Mercer County of, and the American Red Cross (ARC) defendant conduct their business in Philadelphia, County of Philadelphia in the State of Pennsylvania where a substantial part of the events or omissions giving rise to the claim occurred, furthermore, Local 5103 conduct their business from Emerson, New Jersey has an agreement with ARC to represent some of the union members employed by ARC.

## FACTUAL ALLEGATION

8. Plaintiff SHARIFI began her employment with ARC on or around September 17, 2019 as a mobile phlebotomist. Her on-the-job training lasted nearly 12 weeks.

9. American Red Cross is a humanitarian organization guided by its Congressional Charter and the Fundamental principle of the International Red Cross Movement, providing humanitarian services for nearly 100 years.

10. Local 5103 provides membership representation to the Private Sector such as American Red Cross and Memorial Hospital of Salem County as part of New Jersey's Professionals Health Care Union, and as of this date is in a contract agreement with ARC and all times herein mentioned.

10. For some unknown reason, either for lack of proper training by the ARC organizaation, or carelessness, management intentionally or negligently do not enforce ARC anti-discrimination or anti harassment policies. Some of the new employees, mostly in the minority group, go through an excessively difficult time working with a handful of unprofessionals and bully employees, and management willfully, intentionally, or carelessly fail to properly manage or provide the support needed for the new hires to become successful in their job. It would be necessary to mention that there were many professional, supportive and caring staff among the group as well, but those few handful bad apples in the basket could spoil anybody's life experiences and continue to do so for lack of accountability. It is fair to say that some of the managers played a big role in creating this hostile work environment, so they could benefit from muddying water, creating a cover up for their own unethical behaviors.

11. On-the-job training is mainly focused on "Blood Collection" and introductions on the types of bags used to collect blood for the different purposes based on the orders received from hospitals. The room preparation, set up,

quality control of equipment, procedures, method, and steps had to be taken for arms' sanitation, duration of blood flow, after the blood flow, termination of blood donation process, storage of blood, and a brief training on delivery of blood back to headquarter in Philadelphia for further process.

12. In combination, no more than 10 minutes of time was spent by the Human Resources and the Union Representative to review the policies and the union contract during the training.

13. For many, the work nightmares started after the training time. All the mobile phlebotomists start their day by driving from home to the different locations assigned all over the State of New Jersey and some Eastern part of the State of Pennsylvania, every day, at different hours of the day. These blood drives could be either in a church, university, highschools, pharmaceutical companies or any small offices. Many of these businesses are huge in size, and many others, like most of highschools located in North Jersey, lacked parking spots.

14. According to ARC policy, all the mobile phlebotomists must use their own personal cell phones, yet using an ARC app to clock in and out for actual work only when they would arrive or leave at the exact room where the blood drive would be conducted. The traveling time would be paid based on the mileage driven that day. It was one hour for every 50 miles, yet this calculation would start for miles driven more than 120 miles. To explain it better, for the first 120 miles, ARC would only pay for two hours of straight pay as traveling time for whom ever got hired after October of 2018, and if this phlebotomist would drive longer than 120 miles that day, then they would get paid only one hour for every 50 miles driven after that, and all of our traveling time were considered straight pay, never got paid overtime for traveling time, based on the new agreement with the union. The explanation for two hours pay for 120 miles was that you would have to drive 20 miles to and from work in any other work place at your own

expense, so every day, 20 miles would get deducted from your total mileage driven for the purpose of mileage pay and traveling time related to that 20 miles.

15. Furthermore, ARC would not take responsibility to pay the phlebotomist whom would get stuck behind the rush hour traffic, delayed traffic due to an accidents,all other traffics in turnpike, highways, Garden State Parkway, residential one lane streets with 25 or 35 miles speed limit, nor they would guarantee parking spot at those unknown places with no parking area, or places with limited street parking space, nor they would inform you of exact location of the blood drive in that business. Most of the time, arriving at the location was one thing, and driving around in those massive universities, or pharmaceutical companies, which are like a city within a city, looking for ARC trucks as the only sign of determination of the final destinations was another thing, in top of counting on lucky to find a suitable parking spot and walking towards the building. All of these times were spent from phlebotomists' own time, unpaid, so they could have a job. Phlebotomists like the Plaintiff in this case dealt with all these mismanagement and job related difficulties because first they believed in the goodness of what they were hired to do, and most importantly, they all had lots of bills to pay at the end of the month.

16. Another factual statement in regards to ARC is their failure to put policies and procedures in place which would prevent or at least minimize the issue of daily clock in and out and proper monitoring of attendance or tardiness of their mobile staff. The current system would allow some to abuse the process to manipulate or accuse an innocent employee of wrongdoing.

## FIRST CAUSE OF ACTION

**Violation of Fair Labor Standards Act (FLSA), as codified, 29 U.S.C. §§ 201, and relevant State Law, 34 Pa. Code§ 231.1 (b) (Against Defendant AMERICAN RED CROSS and LABOR UNION Local 5103)**

17. Plaintiff worked for the Defendant American Red Cross, Penn-Jersey Region, for nearly 18 months as a MOBILE phlebotomist. As part of work requirement, Plaintiff had to drive her own car to the different locations assigned by the employer on a daily basis. These locations would be anywhere in the State of New Jersey, or some part of Eastern portion of the State of Pennsylvania.

18. To be considered as an ARC employee, Plaintiff had to become a Labor Union member with Local 5103, and a percentage of her paycheck would be automatically deducted as part of her membership dues in which in return the union had promised to represent and protect her rights as an hourly employee at her work place.

19. Defendant Labor Union Local 5103 was in an agreement with American Red Cross Blood Service Region dated October 1st of 2018 through September 30, 2021.

20. It is not beknown to the Plaintiff if any Labor attorney has reviewed and signed this agreement since they have ignored and refused to provide this information.

21. The Colleetive bargaining agreement has violated section 5 U.S.C. 5542(b)(2) and 5 CFR 550.112(g) of Fair Labor Standard Act (FLSA) in regards to travel time and overtime paid. The FLSA and Title 34 of Pennsylvania Statutes, Codes, and Regulations considers traveling time as "compensable time" when " time spent by an employee in travel as part of their principal activity is work time

and must be counted as hours worked" for the purpose of minimum wage and hours work over 40 hours in a week and any time beyond 40 hours per week should be counted as overtime pay at the rate of one and one-half times of regular rates of pay. These principles were not being applied equally and uniformly among all employees and union members based on the date of hiring due to the newly signed union contract dated October of 2018 which was in violation of Fair Labor Standard Act.

22. According to this Labor Union contract, the newly hired employees not also were not receiving traveling time accordingly, but also they never received overtime for the traveling time which would be considered as work hours when they passed over 40 hours .

23. The American Red Cross has been in this business for more than 100 years, and they should have known that this contract was in violation of Federal and State Law. Enforcing this illegal contract was willful, despicable, malicious, knowing, and intentional and it was intended to deceive a small group of vulnerable employees who had faith in the Employer and labor Union to conduct ethical and righteous business practices.

24. Plaintiff strongly believes that these acts by defendants were intentional and unreasonably with the recognition that the acts were likely to result in significant mental anguish to Plaintiff. In committing the outrageous acts as described heretofore, Defendants acted with intent to inflict monetary harm or spending involuntary and unpaid hours behind heavy traffic on daily basis can cause severe mental anguish on Plaintiff and with understanding that injury or severe mental anguish to Plaintiff was substantially certain as result.

25. Defendant conduct was willful, despicable, malicious, knowing, and intentional. Accordingly, Plaintiff demands an award of compensatory, punitive and/or exemplary damages in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

**Intentional Discrimination and Wrongful Discharge in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 1981a (Against Defendant AMERICAN RED CROSS )**

26. Within the State of Pennsylvania and Federal Law there exists a substantial and fundamental public policy, set forth in Government Code, which forbids discrimination and harassment on the basis of protected class such as race and gender.

27. Plaintiff was terminated on or around February 11, 2020 due to discriminatory action of the Defendant AMERICAN RED CROSS (referred to ARC) in this case.

28. Plaintiff in this case was clearly targeted by her managers due to a combination of her age (47), gender (female), and her national origin soon after she started seeking a promotion in which she strongly believes, and evidence will prove, were given to young and good looking employees in their 20th.

29. Plaintiff was terminated from her duty approximately 3 months after questioning unequal enforcement of ARC policies. Plaintiff soon learned that a beautiful young lady in her twenties, who the District manager Hammad Khan (referred to DM) started to develop a feeling towards her right away, got the promotion on her first interview while she was getting error messages attempting to apply through the internal application. Her request for assistance was completely ignored by her supervisor. Later through the text messages, she confronted the inequality in enforcement of ARC policies. The DM later indicated through a phone call that he had "the power to hire and fire people as he desires" and if he found the applicant of "being nice", he could promote them to the desired position.

30. Plaintiff soon learned that the DM had conspired with the supervisor Brian Carey to terminate her of her duty right after that exchanged text message between her and DM. She was called to a confronting meeting with DM and Brian Carey, her supervisor, to the Philadelphia office on 11/20/2019. Meeting was conducted in a very small room without any other females, and it was meant to intimidate her greatly.

31. The next day, she witnessed herself when Brian Carey on November 21, 2019 inquired some employees to assist him by monitoring her closely for any possible mistakes or by giving her a hard time at work and/or to create a hostile work environment for her in hope of resignation, so they could develop needed cause for her termination. Plaintiff reported Brian's action to DM on December 18, 2019.

32. Subsequently, she was videotaped at work by another employee using her personal cell phone, while assisting a donor without their consent, and despite her prior complaint in regard to being spied on at work, DM decided to use that video as an evidence of wrongdoing, by doing so violating the Federal and State law, and declaring of her malpractice without providing any clear evidence of misconduct. This video was used as another made up cause for termination.

33. Plaintiff strongly believes that these acts by defendants were intentional and unreasonably with the recognition that the acts were likely to result in significant mental anguish to Plaintiff. In committing the outrageous acts as described heretofore, Defendants acted with intent to inflict injury or severe mental anguish on Plaintiff or with understanding that injury or severe mental anguish to Plaintiff was substantially certain to result.

35. Defendant conduct was willful, despicable, malicious, knowing, and intentional. Accordingly, Plaintiff demands an award of compensatory, punitive and/or exemplary damages in an amount according to proof at trial.

## THIRD CAUSE OF ACTION

**Invasion of Privacy in Violation of Federal Wiretapping Act, codified by 18 U.S. Code § 2511, State of Pennsylvania's Wiretapping Law Title 18, Chapter 57,subchapter B 5703 (Against Defendant AMERICAN RED CROSS, HAMMAD KHAN, BRIAN CAREY, LISA SCARAMUZZO, GABE ENCARNACION)**

36. Plaintiff refers to and incorporates by reference each and every preceding and subsequent paragraph in this Complaint, as if fully set forth herein.

37. At all times herein mentioned, Plaintiff was an U.S. Citizen, and a New Jersey resident and employed by American Red Cross (herein referred to "ARC") conducted their business in Philadelphia, State of Pennsylvania.

38. Within the State of Pennsylvania and Federal Law there exists a substantial and fundamental public policy, set forth in Government Code, which recognizes that individuals have a right to a reasonable expectation of privacy even at work place.

39. These public policies benefit the public and guarantee the right to Freedom, Liberty, and Happiness to everyone.

40. In an elaborate scheme, under direction of management, DM Hammad Khan and Brian Carey conspired with help from a few opportunistics employees allegedly conspired together to create a cause for Plaintiff's termination. On November 21, 2019, Plaintiff herself witnessed that Brian Carey is recruiting some staff to monitor her closely. On December 18, 2019, in the presence of DM Hammad Khan and Penny Smith from HR, she complained to the management regarding getting spied on at work and her hostile workplace .

41. On February 06, 2020, on the date that she was originally scheduled to the headquarter to get her pink slips, she got notified by management that,

mysteriously, a ten second video recording of her while at work helping a donor, was captured and emailed to an office employee , unknown to public on exact date that she was scheduled to get terminated, by an anonymous person.

42. Plaintiff later was able to accurately identify the date, location, and operator of that recording as: January 06, 2020, at "Our Lady of Mount Carmel Church" located at Doylestown, Pennsylvania, which was taken by Lisa Scaramuzzo, another mobile phlebotomist and the vice president of union representative by the assistance of Gabe Encarnasion, the supervisor in charge of blood drive on that day and her romantic partner, and the sender of that email as Brian Carey. This video was another proof of her claim of being spied on the job.

43. In violation of Plaintiff's legal rights and in violation of Section 2522 of Title 18 of the U.S. Federal codes, and Pennsylvania State's law: Title 18, Chapter 57,subchapter B 5703, and ARC' own policy in which would not give consent for use of videorecording without the party's prior consent, this video was taken, transmitted, and was used as another made up excused to be considered by DM for her termination. By doing so, DM had violated the LAW when he knowingly and intentionally accepted and used this illegal recording, when she was clearly being targeted by her managers.

44. The District manager and HR manager should have known that implementing this video as an excuse and cause for termination would be in violation of Federal, State Laws, and ARC policy. This ignorance was done deliberately, intentionally, willfully, and with malice intent to create the cause for her termination.

45. But for Defendant's violation of above referenced, Plaintiff would not suffer from mistrust, depression, anxiety, stress, fear, and mental Health.

46. As a further direct and proximate result of these mistreatment by management as heretofore described, Plaintiff has been damaged and deprived of the TRUST, security, solace, and peace of mind for which she sought to find by

working for ARC, supposedly an humanitarian organisation , with Defendants, thereby causing her to suffer severe emotional and mental distress, anguish, doubt, uncertainly, sleepless nights, degradation, headaches, inconvenience, insecurity, fear, distrust and loss of enjoyment of life.

47. Defendants have engaged in many unfair, deceptive, harassing, and fraudulent acts of abuse of their authorities by citing fake complaints and issues to accuse her of violating the ARC policies, while in meantime, they did worse by violating the Federal and States Laws just to terminate her while ignoring all of her complaints regarding the harassment and hostile work environment to cover up of their own wrongdoing.

48. The outrageous conduct of Defendants, and each of them, described above was done with malice, fraud, and oppression and with conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff. Defendants, through its officers/or its supervisors, authorized, condoned, willfully ignored and/or ratified the unlawful conduct and manoeuvre of defendants named in this action. By reason thereof, Plaintiff is entitled to compensatory, punitive or exemplary damages from all Defendants, and each of them, as prayed for below.

## FOURTH CAUSE OF ACTION

### Intentional and Negligent Infliction of Emotional Distress

### (Against ALL Defendants)

49. Plaintiff refers to and incorporates by reference each and every preceding and subsequent paragraph in this Complaint, as if fully set forth herein.

50. At all relevant times, These ARC management were in the Position of Power and Authority. Their position is prominent and influential, and their

statements were accepted as a true statement in comparison to the statement given by Plaintiff.

51. Defendants carried out these acts intentionally or unreasonably with the recognition that the acts were likely to result in significant monetary and mental anguish to Plaintiff. In committing the outrageous acts as described heretofore, Defendants acted with the intent to inflict injury or severe monetary and mental anguish on Plaintiff or with the understanding that injury or severe monetary and mental anguish to Plaintiff was substantially certain to result.

52. In engaging in the acts herein described, AMERICAN RED CROSS employees acted in the course and scope of their agency through MANAGEMENT and AMERICAN RED CROSS encouraged, instigated, approved, and/or ratified their employee's conduct. Therefore, AMERICAN RED CROSS is vicariously liable for these EMPLOYEES conduct as herein described.

53. Along with, LABOR UNION LOCAL 5103's representatives acted in the course and scope of the UNION LOCAL 5103 and UNION LOCAL 5103 encouraged, instigated, approved, and/or ratified their representatives' conduct. Therefore, UNION LOCAL 5103 is vicariously liable for these paid REPRESENTATIVES' conduct as herein described.

54. As a direct and proximate result of EMPLOYEES and REPRESENTATIVES outrageous conduct as described herein, Plaintiff endured great monetary and mental anguish, shock, mistrust, feelings of helplessness and desperation, sleepless nights, anxiety, and other severe emotional distress, all to her general damage that will be determined according to proof at trial.

55. Defendants' conduct was willful, despicable, malicious, knowing, and intentional.

Accordingly, Plaintiff demands an award of compensatory, punitive and/or exemplary damages in an amount according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and/or each of them, as follows:

1. Direct the defendant ARC to re-employ the plaintiff.
2. Direct the defendant ARC to promote the plaintiff.
3. Direct the defendant ARC to pay for lost overtime wages.
4.Grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.
4. For general damages, including, without limitation mental and emotional damages;
5. For special and compensatory damages on the ARC and individual Defendants for violation of Wiretapping Law.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 24 day of JUNE , 2021 .

**By:** PARASTU SHARIFI

**PARASTU SHARIFI**
5 Winchester Drive
East Windsor, New Jersey 08520

Plaintiff hereby demands trial by jury

## Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

As Pro Se litigant, I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: June 24 , 2021

**PARASTU SHARIFI**

**By:** *PARASTU SHARIFI*

EEOC Form 161 (11/2020)

# U.S. Equal Employment Opportunity Commission

## Dismissal and Notice of Rights

To: **Parastu Sharifi**
**5 Winchester Drive**
**East Windsor, NJ 08520**

From: **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2021-01011** | **Legal Unit, Legal Technician** | **(267) 589-9707** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Dana R Hutter

**Dana R. Hutter,**
**Deputy Director**

March 26, 2021
*(Date Issued)*

Enclosures(s)

cc:
**Leyla Izquierdo**
**Paralegal, Labor & Employment**
**American Red Cross**
**431 18TH ST NW**
**LEYLA IZQUIERDO@REDCROSS ORG**
**Washington, DC 20006**

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** PARASTU SHARIFI, Pro Se

**DEFENDANTS** American Red Cross + Health Professional & Allied Employess Local 5103 Hammad Khan, Brian Carey, Lisa Scaramuzzo Gabe Encarnacion

**(b)** County of Residence of First Listed Plaintiff Mercer
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Philadephia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
5 Winchester Drive
East Windsor, NJ 08520
619-748-8624

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☒ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: FLSA + Title VII + Title 18
Brief description of cause:

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: None, only pending Arbitration in Aug. 2021
JUDGE DOCKET NUMBER

DATE 6-24-21 SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE