**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PARASTU SHARIFI,** | : | |
| | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| v. | : | **No. 21-2873** |
| | : | |
| **AMERICAN RED CROSS, et al.,** | : | |
| | : | |
| *Defendants.* | : | |

<u>**MEMORANDUM**</u>

**KENNEY, J.**                                                                     **January 12, 2022**

## I.    INTRODUCTION

In this suit, *pro se* Plaintiff Parastu Sharifi brings four claims against her former employer, her labor union, and several individually named Defendants for violations of state and federal labor, discrimination, and wiretapping laws, and for negligent and intentional infliction of emotional distress.  ECF No. 16 ("Am. Compl.").  Plaintiff Sharifi was employed by Defendant the American Red Cross ("ARC") as a mobile phlebotomist.  Defendant Health Professional and Allied Employees, Local 5103 ("HPAE" or the "Union") is the collective bargaining representative for ARC employees.  The individually named Defendants are ARC employees.

Presently before the Court are Defendants ARC, Brian Carey, Gabe Encarnacion, and Lisa Scaramuzzo's (the "ARC Defendants") and Defendant HPAE's motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF Nos. 19 and 20.

## II.    FACTS[1]

---

[1] The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [ ] construe[s] them in a light most favorable to the non-movant."  *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  Except as noted, the Court draws the following facts from the Amended

Plaintiff's employment as a mobile phlebotomist with ARC began on September 17, 2019.  Am. Compl. at ¶ 8.  Plaintiff was a member of Defendant HPAE, the union for ARC employees.  *Id*. at ¶ 1.  Defendant Brian Carey is a Supervisor for ARC.  *Id*. at ¶ 2.  Defendant Lisa Scaramuzzo was a mobile phlebotomist and Vice President of HPAE.  *Id*.  Defendant Gabe Encarnacion is a supervisor for ARC.  *Id*.  Plaintiff claims that she was unfairly disciplined, denied promotion opportunities, subjected to a hostile work environment, and ultimately terminated because of her gender, age, and ethnicity.  Plaintiff is a 47-year-old Iranian woman.

Plaintiff also complains that she was not properly compensated for time spent driving for ARC and that her attendance was not accurately monitored by the clock-in, clock-out system used by ARC.  Plaintiff alleges that her workday started by driving from her home to different locations around New Jersey and the eastern part of Pennsylvania to attend blood drives.  *Id*. at ¶ 14.  She claims that traveling time was paid based solely on mileage driven that day and not time spent driving.  *Id*.  ¶ 15.  Plaintiff explained that she was paid two hours of straight pay for the first 120 miles driven in a given day and one hour for every 50 miles driven in excess of 120 miles, regardless of the amount of time it actually took to drive those miles.  *Id*.  Plaintiff alleges this was not an accurate or fair way to compensate her for the substantial time she spent driving for her job, as she was not paid for time spent in rush hour traffic or time spent looking for parking.  *Id*. at ¶ 16.  Plaintiff also claims she was required to use an ARC application on her personal cell phone to clock-in and clock-out when she arrived at or left the blood drive site.  *Id*.

---

Complaint and the attached exhibits.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

at ¶ 15.  Plaintiff claims that this system was inaccurate and allowed for manipulation.  *Id.* at ¶ 17.

Plaintiff also alleges that she was unfairly disciplined and denied promotions.  In July or August 2019, Plaintiff reached out to her supervisor—Defendant Brian Carey—about a promotion opportunity that was posted online.  *Id.* at ¶ 18.  Plaintiff claims that on October 1, 2019—in response to this conversation about a promotion—Defendant Carey unexpectedly gave Plaintiff a disciplinary action for five instances of tardiness between July and September 2019. *Id.* at ¶ 19.  Plaintiff claims that Carey reprimanded her in a public and embarrassing manner and that he issued the disciplines solely to prevent her from being promoted.  *Id.*  Plaintiff claims that she reached out to her union representative to file a grievance for the incident, but the representative never actually filed the grievance.  *Id.* at ¶ 20.

Plaintiff states that on October 3, 2019, she reached out to a different ARC manager— District Manager Hammad Kahn—via text message about another possible opening for a supervisory position, and that he never responded to her.  *Id.* at ¶ 21.  Plaintiff claims she later learned that the position was given to a "24 year old new[ly] hired female" who the supervisor had "developed feelings for."  *Id.* at ¶ 22.  Plaintiff alleges that the woman was hired for the supervisory position in violation of the agreement between ARC and HPAE, which requires a six-month probationary period for all new hires before they can be eligible for a promotion.  *Id.* Plaintiff claims that after she texted Mr. Kahn to ask about this, Mr. Kahn and Defendant Carey reacted angrily in texts, phone calls, and a hostile and intimidating meeting with Plaintiff.  *Id.* at ¶ 23–24.

On December 18, 2019, Plaintiff was given an additional disciplinary action for being 13 minutes late to her assigned location. *Id.* at ¶ 25. Plaintiff claims she reached out to HPAE several times about filing a grievance based on this discipline but was ignored. *Id.* at ¶ 26.

Plaintiff further alleges that Mr. Kahn and Defendant Carey conspired together to manufacture "cause" for Plaintiff to be terminated. *Id.* at ¶ 27. Plaintiff claims that Defendant Carey recruited other employees to watch her closely and create a hostile work environment for her. *Id.* Plaintiff claims that Defendant Lisa Scaramuzzo, with the assistance of Defendant Gabe Encarnacion, filmed a conversation Plaintiff had with a blood donor without her consent and sent the video to another ARC employee. *Id.*

Plaintiff's employment was terminated on February 11, 2020. *Id*. at ¶ 28. Plaintiff claims she was disciplined and eventually terminated for discriminatory and false reasons. *Id.* On December 11, 2020, Plaintiff filed a charge of discrimination against HPAE with the EEOC (attached to this Memorandum as "Exhibit 1") claiming national origin discrimination because HPAE allegedly failed to file a grievance on Plaintiff's behalf.[2] On December 14, 2020, Plaintiff filed a charge of discrimination against ARC (attached to this Memorandum as "Exhibit 2") claiming national origin and age discrimination because she was twice denied the opportunity to

---

[2] While, as a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings, a document that is integral to or explicitly relied upon in the complaint may be considered. *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997). The Court may also consider matters of public record and items appearing in the record of the case. *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011). As Plaintiff's EEOC charges of discrimination and right to sue letters are a matter of public record, appear in the record of this case, and are integral to her claims, the Court will consider them in deciding these motions to dismiss, though they are not attached to Plaintiff's Amended Complaint. Plaintiff's charge of discrimination against ARC is filed on the docket at ECF No. 19-2 as an exhibit to the ARC Defendants' motion to dismiss, her charge of discrimination against the union is similarly attached to its motion (at ECF No. 20-1), and her right to sue letter was attached to Plaintiff's initial Complaint, ECF No. 1 at p. 17.

apply for a promotion, was treated with hostility for asking questions, and was disciplined and terminated unfairly.

### III.     PROCEDURAL HISTORY

On June 24, 2021, Plaintiff filed a four-count complaint in the United States District Court for the Eastern District of Pennsylvania.  ECF No. 1.  On October 18, 2021, Defendants moved to dismiss the complaint.  ECF No. 14.  On November 2, 2021, Plaintiff filed a first amended complaint, which is now the operative complaint.  ECF No. 16 ("Am. Compl.").  The Court then dismissed Defendants' motion to dismiss as moot and ordered that responsive pleadings be filed on or before November 16, 2021.  ECF No. 18.  On November 16, 2021, the ARC Defendants and the Union again filed motions to dismiss for failure to state a claim.  ECF Nos. 19 & 20.

In Count One of the Amended Complaint, Plaintiff alleges a violation of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA") against both the ARC and HPAE.  Am. Compl. ¶ 29–39.  Plaintiff claims that the collective bargaining agreement between ARC and HPAE, which governed the terms and conditions of her employment, violates the FLSA and the PMWA with respect to travel time and overtime paid, citing 29 U.S.C. § 207(a)(1) and 34 PA. Admin Code § 34-231.1(b).  Per Plaintiff, travel time should be counted as hours worked for overtime pay, and this principle was not equally and uniformly applied to all employees and union members based on their date of hire.

Count Two asserts claims against all Defendants for intentional discrimination and wrongful discharge in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and Section 1981.  Am. Compl. ¶ 40–46.  Plaintiff avers that her treatment by ARC and the Union was discriminatory, and that her termination was

due to discrimination based on a combination of her age, national origin, and gender after she sought a promotion which "was given to young and good looking employees in their [twenties]." Am. Compl. ¶ 41.

Count Three asserts against all Defendants invasion of privacy in violation of the Federal Wiretapping Act and the Pennsylvania Wiretapping Law. Am. Compl. ¶¶ 47–62. This Count alleges that a video recording was taken of Plaintiff without her consent by Ms. Scaramuzzo while Plaintiff was helping a donor. *Id.* ¶ 53. Plaintiff claims that this was part of a conspiracy between ARC employees and that the video was then used "as another made up excuse [ ] for her termination." Am. Compl. ¶¶ 52–55. Plaintiff emphasizes that Scaramuzzo's acts violated ARC's workplace policy. *Id.* at ¶ 54.

In Count Four, Plaintiff asserts against all Defendants claims for intentional and negligent infliction of emotional distress. *Id.* at ¶¶ 63–69. Plaintiff claims that the Union is vicariously liable for the intentional and negligent infliction of emotional distress committed by unknown Union representatives against Plaintiff. Plaintiff alleges Defendants "carried out these acts intentionally or unreasonably with the recognition that the acts were likely to result in significant monetary and mental anguish to Plaintiff." *Id.* at ¶ 65. Plaintiff alleges ARC is vicariously liable for Mr. Khan's, Mr. Carey's, Ms. Scaramuzzo's, and Mr. Encarnacion's conduct. *Id.* at ¶ 52.

The ARC Defendants moved to dismiss Plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 19. The ARC Defendants claim that Count One should be dismissed because Plaintiff failed to allege any specific failure to pay claim under either the FLSA, 29 U.S.C. § 201, *et seq*., or the PMWA, 43 P.S. § 333.101, *et seq*., as required. Count Two should also be dismissed because Plaintiff failed to state *prima facie* claims under

either Title VII or the ADEA, and Plaintiff's national origin discrimination claim under Section 1981 is improper, as Section 1981 only prohibits discrimination based on race.  Per the ARC Defendants, Plaintiff's invasion of privacy under federal and state wiretapping laws is legally deficient and Plaintiff fails to assert claims of negligent and intentional infliction of emotional distress.

Defendant HPAE also moved to dismiss the first amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 20.  The Union notes that the complaint failed to allege with specificity the overtime hours to which Plaintiff claims an entitlement, or the dates on which the alleged violations of the FLSA and PMWA occurred.  The Union also argues that it cannot be liable for these claims because labor unions are not "employers" under either the FLSA or the PMWA.  The Union claims that Count Two should be dismissed against it as the complaint is devoid of any factual allegations that refer to or link any conduct by HPAE to Plaintiff's termination from the ARC.  Further, Plaintiff's claims of gender and national origin discrimination and ADEA claim against HPAE should be dismissed with prejudice because Plaintiff failed to exhaust administrative remedies.  The Union argues that Counts Three and Four should be dismissed for Plaintiff's failure to link the alleged misconduct to the Union or specific union representatives.

### IV.    JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over this matter under 28 U.S.C. § 1331 as it arises under the laws of the United States.  The Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367(a).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted).  A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts as true the factual allegations contained in the complaint but disregards rote recitals of the elements of a cause of action, legal conclusions, and conclusory statements.  *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).  The Court will grant a motion to dismiss if the factual allegations do not "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Third Circuit directs the Court to apply a three-step analysis on a 12(b)(6) motion.  First, the Court must note the elements the plaintiff must plead to state a claim.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 675).  Next, the Court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  *Id*.  Finally, the Court assumes the veracity of well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.  *Id*.  In ruling on a motion to dismiss, the Court considers only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3d Cir. 2013).

A *pro se* litigant's complaint is held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Courts have a duty to construe pleadings liberally and apply the applicable law, irrespective of whether a *pro se* litigant

has mentioned the law by name.  *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).  A *pro se* complaint "can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines*, 404 U.S. at 520–21); *see also Bacon v. Minner*, 229 F. App'x. 96, 100 (3d Cir. 2007).  If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, or unfamiliarity with pleading requirements.  *Boag v. MacDougall*, 454 U.S. 364 (1982).

## V.      DISCUSSION

### A.  Plaintiff's Claims Under the FLSA and PMWA Against the ARC and Union

In Count One, Plaintiff alleges ARC and the Union violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., and the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq*.  Plaintiff alleges the collective bargaining agreement between ARC and the Union violates the FLSA and PMWA because traveling time was not counted as "compensable time."

The ARC Defendants argue that Plaintiff has not stated a FLSA or PMWA claim because she does not allege any specific failure to pay overtime.  The Union raises the same issue in its motion, and further argues that it is not an employer and so cannot be held liable for a failure to pay overtime under either statute.

The FLSA requires an employer to compensate its employees for work in excess of forty hours per week at a rate of one and one-half times the employees' standard wages.  29 U.S.C. § 207(a)(1).[3]  Plaintiff-employees asserting a claim bear the burden of proving they performed

---

[3] As the PMWA and FLSA both require employers to compensate employees for overtime hours worked and have an identical standard of liability for overtime violation claims, the Court will not address these

work for which they were not paid and that the defendant-employer had either actual or constructive knowledge of the plaintiff's overtime work. *Sniscak v. Borough of Raritan*, 86 Fed. Appx. 486, 487 (3d Cir. 2003). To state a plausible overtime claim, a plaintiff must allege forty hours of work in a given workweek as well as some uncompensated time in excess of forty hours. *Davis v. Abington Memorial Hospital*, 765 F.3d 236, 241 (3d Cir. 2014). Additionally, while employers may be required to compensate employees for travel during the workday, employers are not required to compensate employees for ordinary travel time from home to work (i.e., time spent commuting). 29 C.F.R. § 785.34. This rule applies whether the employee works at a fixed work site or at a different work site each day. 29 C.F.R. § 785.35

Further, while the FLSA provides for employees to bring civil actions against their employer for FLSA violations, the FLSA definition of "employer" expressly excludes labor organizations. 29 U.S.C. § 203(d). The definition of "employer" under the PMWA also does not cover the Union, because it is an organization that represents its members' collective interests and is not "acting in the interest of an employer." 43 P.S. § 333.103(g).

In the complaint, Plaintiff alleges that the collective bargaining agreement did not provide her payment for "traveling time" or "overtime for traveling time," for which she was required to use her own car. However, Plaintiff failed to allege any *specific workweek* in which she worked in excess of forty hours and was denied overtime pay; i.e., Plaintiff did not allege what hours she worked for which she was not paid. As such, the ARC Defendants' motion is **GRANTED** as to Plaintiff's Count One claim, and the claim is **DISMISSED without prejudice,** as it is possible Plaintiff could cure this deficiency by further amendment of the

---

claims separately. *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 560 (E.D. Pa. 2013) (citing *Baum v. Astrazeneca LP*, 372 Fed. Appx. 246, 248–49 (3d Cir. 2010)).

complaint to include specific uncompensated hours worked in excess of 40 hours in a specific workweek, and explain whether the driving time was commuting or travel time during the work day.

However, the Plaintiff's Count One claim against HPAE is **DISMISSED with prejudice**, as the Union cannot be liable to one of its members for lost wages under the FLSA or PMWA, and thus amendment would be futile.[4]

### B.  Plaintiff's Discrimination Claims Against All Defendants

In Count Two, Plaintiff alleges intentional discrimination and wrongful discharge in violation of Title VII of the Civil Rights Act of 1964 (based on national origin and gender), the Age Discrimination in Employment Act, and Section 1981 (national origin) against all Defendants.  Am. Compl. at ¶¶ 40–46.  Plaintiff claims she was targeted by her managers due to a combination of her age (47), gender (female), and national origin (Iran) "soon after she started seeking a promotion," which she believes was "given to young and good looking employees in their 20[s]."  *Id*. at ¶ 41.  She also claims she was disciplined for minor infractions differently from other employees.  Plaintiff alleges that three months after she questioned the unequal enforcement of ARC policies and requested information about a promotion opportunity, she learned that a "beautiful young lady in her twenties," who the District Manager, Hammad Khan, "developed feelings for," got the promotion.  *Id*. at ¶ 42.  Plaintiff alleges that Carey and Khan conspired to terminate her.  *Id*. at ¶ 43.  On November 20, 2019, Plaintiff was called to a meeting with Carey and Khan where Carey and Khan tried to intimidate Plaintiff and treated her with

---

[4] The Court notes that while amending this cause of action against the Union is futile, there may be other causes of action—such as a breach of the duty of fair representation—that could, possibly, be plausibly pled here.  As such, the Plaintiff is not barred from filing an second amended complaint against the Union, so long as she does not continue to raise claims that have been dismissed with prejudice and the claims are supported by an adequate legal and factual foundation.

hostility. *Id*. The next day, Plaintiff witnessed Carey ask "some employees" to assist him by monitoring Plaintiff closely and to give her a "hard time" and to "create a hostile work environment for her in hope of resignation." *Id*. at ¶ 44. Plaintiff alleges she reported Carey's actions to Khan on December 18, 2019 but nothing was done to assist her. *Id*.

### 1. Title VII Claims Based on National Origin and Gender

Title VII's anti-discrimination provision makes it unlawful for an employer to discriminate against any individual with respect to "compensation, terms, conditions, or privileges of employment" or to "deprive any individual of employment opportunities or otherwise adversely affect his status as an employee" because of the individual's nation origin or sex. 42 U.S.C. § 2000e–2(a). To prevail under Title VII, the plaintiff's claims must meet the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1972). Under this framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Id.*

A Plaintiff can state a Title VII intentional discrimination claim based on disparate treatment so long as she can show that the employer treated her less favorably than others because of a protected trait(s). *Ricci v. DeStefano*, 557 U.S. 557 (2009). A plaintiff who claims intentional discrimination based on disparate treatment must prove that the defendant had "a discriminatory intent or motive" for the adverse employment action. *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 543 (E.D. Pa. 2013).

A plaintiff can also state a Title VII claim based on hostile work environment where she shows: (1) she suffered intentional discrimination because of her membership in a protected group; (2) the discrimination she suffered was severe and pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same protected trait in the same position; and (5) the existence of *respondeat superior*

liability.  *See Davis v. City of Newark*, 285 Fed.Appx. 899, 902 (3d Cir. 2008).  Factors that can indicate a hostile work environment include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

An employer can be vicariously liable for illegal discriminatory acts by supervisory employees who create a hostile work environment amounting to employment discrimination.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998).  Where a co-worker is the source of the alleged harassment, a plaintiff must establish that the employer did not provide reasonable channels for complaints or failed to take appropriate remedial actions once harassment had been alleged.  *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293–94 (3d Cir. 1999).

Additionally, a plaintiff must exhaust all administrative remedies before bringing a claim in a federal district court.  *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997).  Before suing under Title VII, a plaintiff must file a timely discrimination charge with the EEOC.  *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984).  Here, Plaintiff's complaint alleges age, gender, and national origin discrimination and retaliation.  Am. Compl. ¶¶ 41–45.  As a threshold matter, Plaintiff's EEOC charge against the Union only alleged national origin discrimination because HPAE allegedly failed to file a grievance on Plaintiff's behalf, and Plaintiff believed that the Union would file a grievance on behalf of other union members not of the same national origin in similar circumstances.  The charge against the Union makes no reference to Plaintiff's sex or age, and so the Union was not on notice of those claims.  *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (dismissing a gender discrimination claim because "neither the EEOC nor the agency were put on notice of a gender discrimination claim" in plaintiff's charge).  Therefore, Plaintiff

cannot proceed on her Title VII claim of age or gender discrimination in Count Two against the Union because she failed to exhaust her administrative remedies.[56]

On a motion to dismiss for failure to state a claim, the issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Watson v. Dep't of Servs. for Child., Youths & Their Fams. Delaware*, 932 F. Supp. 2d 615 (D. Del. 2013). Here, Plaintiff has pled that she was treated differently—unfairly disciplined and reprimanded, denied promotion opportunities, and ultimately terminated—than other employees of different ages, sex, and national origins. Plaintiff alleged that twice she was denied the ability to even apply for a promotion, and that the job was given to an unqualified person not in her protected categories. Plaintiff claims that her supervisor Mr. Khan explicitly stated that he promoted the other candidate for "being nice," which raises a reasonable inference that he treated female employees more favorably when they conformed to certain gender stereotypes. Plaintiff also claims that she was fired for being late to work seven times, and that to her knowledge no other employee had ever been terminated on that basis. Plaintiff's complaint, taken together with her EEOC charge of discrimination, is sufficient to entitle her to discovery on these claims. The ARC Defendants' motion is therefore **DENIED** as to Count Two with respect to ARC.

The Court will **GRANT** the Union Defendant's motion, however, because Plaintiff's amended complaint fails to plead any facts connecting the Union to the alleged discriminatory conduct. Further, in her EEOC charge, Plaintiff's only basis for believing that the Union was

---

[5] The Court will not dismiss Plaintiff's gender discrimination claim against ARC on this basis. While Plaintiff did not check the appropriate box on her EEOC charge for basing her discrimination claims on sex, she included several references to believing the alleged discrimination was based at least in part on her being a woman, so ARC and the EEOC were on notice that she felt she had been discriminated against based on her sex.

discriminating against her in not filing a grievance on her behalf was purely speculative and lacked any factual foundation.  As such, her amended complaint has not stated a plausible discrimination claim against the Union.[7]

### 2.   Age Discrimination in Employment Act Claims

The Age Discrimination in Employment Act ("ADEA") provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Age discrimination may be established by direct or indirect evidence.  *Duffy v. Paper Magic Grp.*, Inc., 265 F.3d 163, 167 (3d Cir. 2001).  Where the plaintiff has offered no direct evidence of age discrimination, the Court applies the *McDonnell Douglas* burden-shifting framework.  To establish a *prima facie* ADEA case, the plaintiff must show: (1) that the plaintiff was forty years of age or older; (2) that the defendant took an adverse employment action against the plaintiff; (3) that the plaintiff was qualified for the position in question; and (4) that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.  *Smith v. City of Allentown*, 589 F.3d 684, 689–91 (3d Cir. 2009).  Plaintiff's burden at the prima facie stage is "not onerous."  *Id.*

Here, the Plaintiff has pled that she is over 40, that she was twice denied even the opportunity to apply for a promotion, and that the position was given to an unqualified 24-year-old.  However, Plaintiff has not pled facts showing that she was qualified for either of the

---

[7] HPAE appears to claim that it entered into a settlement agreement with Plaintiff on her EEOC charge, but did not include a copy of the settlement or detail any of its essential terms, including whether the Plaintiff gave up her right to sue the Union in exchange for some consideration.  As such, the Court cannot dismiss Plaintiff's discrimination claims against the Union on that basis.

positions in question.  As such, the Plaintiff's ADEA claim against ARC is **DISMISSED without prejudice**.

However, a plaintiff seeking relief under the ADEA must exhaust their administrative remedies by filing a charge with the EEOC as mandated by 29 U.S.C. § 626(d).  *See Boyle v. City of Phila.*. 169 F.Supp. 3d 624, 627 (E.D. Pa. March 14, 2016) ("[Exhaustion] requires that the charge be timely filed and that the claims asserted in the litigation fall within the scope of the charge filed with the [EEOC].").  As with her Title VII sex discrimination claim against the Union, Plaintiff has failed to plead any facts linking the Union to the alleged age discrimination and her EEOC charge did not provide any notice to the EEOC or Union that she was claiming age discrimination.  Therefore, her age discrimination claim against the Union is **DISMISSED with prejudice**.

### 3.  Section 1981 National Origin Claims

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.  Although Section 1981 does not explicitly refer to "race," the Supreme Court has held that the section forbids all "'racial' discrimination in the making of" private and public contracts.  *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987); *Georgia v. Rachel*, 384 U.S. 780, 791 (1966).  Section 1981 does not apply to claims of discrimination based on national origin.  *See, e.g.*, *Ladd v. Boeing Co.*, 463 6 F. Supp. 2d 516, 524 (E.D. Pa. 2006) ("Unlike Title VII, Section 1981 does not prohibit discrimination based on national origin.").  To state a claim under Section 1981, a plaintiff must plead facts sufficient to show: (1) she is a member of a

16

racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute. *Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 716 (3d Cir. 2012); *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).

As such, Plaintiff's claims of national origin discrimination under Section 1981 are **DISMISSED without prejudice**.  Plaintiff only alleges discrimination based on national origin as she pled that she was discriminated against because she is Iranian.  However, to state a Section 1981 claim, Plaintiff must connect the alleged discrimination to her "ancestry or ethnic characteristics."  *St. Francis Coll*, 481 U.S. at 613 ("If respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin . . . , he will have made out a case under § 1981."). Even so, Plaintiff asserts only conclusory statements and does not provide a foundation of facts to allege discrimination based on ancestry or ethnic characteristics.

The Court will **DISMISS with prejudice** Plaintiff's Section 1981 claims against the Union, because, as discussed with respect Plaintiff's Title VII race discrimination claim, the Plaintiff made only speculative and conclusory allegations against the Union and failed to link any of the alleged discriminatory conduct to the Union.

The Court will also **DISMISS with prejudice** Count Two against the individually named defendants, as neither Title VII nor the ADEA provide for individual employee liability. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996); *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 n.29 (3d Cir. 2006).

### C.  Federal Wiretapping Claim Against All Defendants

In Count Three, Plaintiff alleges invasion of privacy in violation of the Federal Wiretapping Act, 18 U.S.C. §§ 2510–15, and the Pennsylvania Wiretapping Law, 18 Pa.C.S. §

5703, against all Defendants.  Am. Compl. at ¶¶ 47–62.  Plaintiff alleges that she was videotaped at work by Ms. Scaramuzzo without Plaintiff's consent, that Ms. Scaramuzzo's acts violated ARC's workplace policy, and that this video recording was used for the purpose of creating cause to terminate her employment.  The alleged video was recorded while Plaintiff was speaking with a donor at a mobile location in Doylestown, Pennsylvania.

The Federal Wiretapping Act prohibits intentional interception of wire, oral, and electronic communications and knowing disclosure of their contents.  18 U.S.C. § 2511(1).  An oral communication is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."  *Id*. § 2510(2).  Thus, for an oral communication to be protected, the speaker must have a reasonable expectation that the communication is private.  *Miller v. Krusik*, 2009 WL 10718510, at *8 (M.D. Pa. Feb. 23, 2009) (collecting cases).

The Pennsylvania Wiretap Act similarly prohibits intentional interception of any wire, oral, or electronic communication without the consent of all parties involved, as well as any knowing disclosure of the contents of communications obtained in violation of the statute.  18 Pa. Cons. Stat. §§ 5703, 5704(4).  As with the federal statute, Pennsylvania's Wiretap Act requires a claimant to demonstrate that the speaker "possessed a reasonable expectation of privacy in the conversation."  *Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998).

To determine the existence of a reasonable expectation of privacy in one's activities, a reviewing court must first examine whether the person exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable.  *Id.* at 523.  Here, the oral communication Plaintiff claims was illegally recorded was her conversation with a donor.  Plaintiff stated that she had a reasonable expectation of privacy in that

conversation, but that statement is conclusory and will be disregarded.  Plaintiff has offered no

facts on which the Court could find it plausible that Plaintiff reasonably expected the

conversation to be private or that such an expectation would have been reasonable.  That Ms.

Scaramuzzo was able to record Plaintiff on her personal cell phone—as opposed to some hidden

or fixed device—significantly undermines Plaintiff's claimed reasonable expectation of privacy,

as both federal and Pennsylvania state courts have held that there can be no reasonable

expectation of privacy where a third person could easily overhear or observe the conversation.

*See, e.g.*, *Pa. State Police v. Grove*, 640 Pa. 1, 161 A.3d 877, 902 (2017) (no reasonable

expectation of privacy where conversations could be seen and overheard by bystanders); *Schultz*

*v. Hughesville Borough*, 2011 WL 3273076, at *22 (M.D. Pa. July 29, 2011) (no reasonable

expectation of privacy where conversation occurred in front of third party).

Plaintiff also cites to an internal ARC policy prohibiting recording devices in the

workplace, but that only undermines her point.  While the policy prohibits employee use of

camera phones in the workplace to "protect the privacy of donors, volunteers and sponsors," it

also provides that ARC may record conversations between employees and non-employees for

"legitimate business purposes, such as customer service training, to monitor the integrity of the

blood supply, to ensure proper disposal of hazardous materials, to ensure compliance with

procedural requirements and/or applicable regulations, and to ensure high quality customer

service."  Am. Compl. at ¶ 53.  The policy provides that recording can take place with or without

notice, depending on the circumstances.  *Id.*  Plaintiff claims she was assisting a donor with

blood collection when her conversation was recorded, which is a situation ARC specifically

permits to be recorded.  As such, Plaintiff had no reasonable expectation of privacy when her

conversation was recorded.

The Court will therefore **DISMISS with prejudice** Count Three against all Defendants.

### D. Intentional and Negligent Infliction of Emotional Distress Against All Defendants

In Count Four, Plaintiff alleges intentional and negligent infliction of emotional distress against all Defendants.  Plaintiff claims Defendants "carried out these acts intentionally or unreasonably with the recognition that the acts were likely to result in significant monetary and mental anguish to Plaintiff."  Plaintiff alleges ARC is vicariously liable for Mr. Khan's, Mr. Carey's, Ms. Scaramuzzo's, and Mr. Encarnacion's conduct.

To state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must plead four elements: (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe.  *Miller v. Comcast*, 724 F. App'x 181, 182 (3d Cir. 2018).  Also, a plaintiff must allege some kind of physical injury.  *Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. Ct. 1994). "Extreme and outrageous" is defined by Pennsylvania law as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Eck v. Oley Valley Sch. Dist.*, No. 19-1873, 2019 U.S. Dist. LEXIS 137743, at *20 (E.D. Pa. Aug. 15, 2019); *see also Pinkney v. Meadville, Pennsylvania*, No. 1:19-CV-167, 2020 WL 1985037, at *4 (W.D. Pa. Apr. 27, 2020) ("Liability under this cause of action is 'reserved by the courts for only the most clearly desperate and ultra extreme conduct.'") (citing *Hoy v. Angelone*, 554 Pa. 134, 152, 720 A.2d 745, 754 (1998)).

Pennsylvania courts recognize four sets of circumstances that can give rise to a claim of negligent infliction of emotional distress: (1) where the plaintiff observed a traumatic injury to a close family member; (2) where the plaintiff personally was in the zone of danger; (3) where the

plaintiff experienced some physical impact; and (4) where the defendant had a contractual or fiduciary duty to protect the plaintiff against some form of emotional distress. *Cooker v. Meadowood Corp.*, No. 21-2667, 2021 U.S. Dist. LEXIS 178272, at *4 (E.D. Pa. Sep. 20, 2021). "As to all four categories, a plaintiff must show that defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Id*.

The ARC Defendants argue that the intentional infliction of emotion distress claim should be dismissed because Plaintiff failed to plead the essential elements against ARC, Mr. Carey, Ms. Scaramuzzo, and Mr. Encarnacion. The Union further argues that Plaintiff has failed to allege any conduct undertaken by any union representative in the course of their employment with HPAE, or in the course of fulfilling their duties as union officials, for which HPAE is liable.

The ARC Defendants further argue that the negligent infliction of emotion distress claim should be dismissed because the only conduct Plaintiff alleges caused her emotional distress occurred when Defendant Carey allegedly recruited "some staff to monitor her closely," and so the conduct she alleges does not fall into any of the four categories recognized by Pennsylvania law. Neither did Plaintiff plead that Defendants had a contractual or fiduciary duty to protect Plaintiff against some form of emotional distress. *See, e.g.*, *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 578 (Pa. Super. Ct. 1999) (declining to recognize a claim for negligent infliction of emotional distress premised on employer-employee relationship). The Union also argues that Plaintiff has failed to allege any acts committed by a HPAE representative that were within the course of his/her employment or within the course of his/her duties as a union official.

Here the Court agrees with Defendants and will **DISMISS with prejudice** Count Four in

its entirety against all Defendants.  None of the conduct Plaintiff alleged meets the extremely

high standard for "extreme and outrageous" so as to state a claim of intentional infliction of

emotional distress.  While the conduct alleged, including being unfairly disciplined and recorded

without consent, taken as true at this stage, is potentially unprofessional and was upsetting to

Plaintiff, it cannot rise of the standard of going "beyond all possible bounds of decency."  *Eck*,

2019 U.S. Dist. LEXIS 137743, at *20.  Additionally, the conduct does not fall into any of the

categories recognized by Pennsylvania law, nor has Plaintiff claimed that she suffered any

physical injury.

## VI.     CONCLUSION

For the foregoing reasons, this Court will **GRANT IN PART AND DENY IN PART**

the motions to dismiss, as follows:

- Count One is dismissed against ARC without prejudice and against HAEP with
  prejudice;

- As to Count Two,

  o Plaintiff's Title VII claim is dismissed against HPAE without prejudice and
    against the individually named Defendants with prejudice;

  o Plaintiff's ADEA claim is dismissed against all Defendants, without prejudice
    as to ARC, with prejudice as to HPAE and the individually named
    Defendants;

  o Plaintiff's Section 1981 claim is dismissed against all Defendants without
    prejudice;

- Count Three is dismissed against all Defendants with prejudice;

- Count Four is dismissed against all Defendants with prejudice.

An appropriate order follows.


**DATE:**   1/12/2022                           **BY THE COURT:**

                                                /s/ Chad F. Kenney
                                                **CHAD F. KENNEY, JUDGE**

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **530-2021-01011** |

**PHILADELPHIA COMMISSION ON HUMAN RELATIONS** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **PARASTU SHARIFI** | **(619) 748-8624** | **1974** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **5 WINCHESTER DRIVE, EAST WINDSOR,NJ 08520** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **AMERICAN RED CROSS** | **501+** | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **700 SPRING GARDEN ST, PHILADELPHIA, PA 19123** | | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NATIONAL ORIGIN

☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

Earliest **02-11-2020**     Latest **02-11-2020**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I.      On or about February 11, 2020, I was discharged from my position as a Mobile Phlebotomist.  I had been employed in this position since August 13, 2018.  I am 46 years old. I am Iranian.**

**II.      I was denied the opportunity to apply for the CSII position twice by supervisor Hammad Khan, District Director, Pakistani. As Mr. Khan is Pakistani and I am Iranian, he feels that my place as a woman is to be seen and not heard, he did not like me asking questions.  n my opinion and my experience as I had grown up in the area on how men expect a woman should be' at the beginning of the second sentence. Mr. Khan instead hired Suleyma LNU, 24, Hispanic, was instead hired for the position. Mr. Khan stated that the reason Suleyma was promoted was because she was nice during the interview.  I later found out that Mr. Khan and Sylma were in a relationship.**

**III.      Hammad Khan, District Director, told me that I was discharged for being late 7 times**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Parastu Sharifi on 12-14-2020 11:19 AM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **530-2021-01011** |

| **PHILADELPHIA COMMISSION ON HUMAN RELATIONS** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

in the time I worked at Respondent.  As of my knowledge, nobody else has been discipline or even more got terminated for being late for 7 times.  He also told me that 7 people complained about me and that they had me on video tape (which is against Respondents policy).

IV.      I believe I have been discriminated against due to my age, 46, in violation of the Age Discrimination in employment Act of 1967, as amended, in that Sylma LNU, 24 who is younger and less qualified than I am was hired for the CMII job.  I also believe I was discriminated against due to my national origin, Iranian, in violation of Title VII of the Civil Rights Act of 1964, as amended, in that I was denied a promotion to CSII and a Hispanic woman that was not qualified was hired.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Parastu Sharifi on 12-14-2020 11:19 AM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 530-2021-01032 |

| **New Jersey Division On Civil Rights** | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Parastu Sharifi** | | **1974** |

| Street Address | City, State and ZIP Code |
|---|---|
| **5 Winchester Drive, East Windsor, NJ 08520** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **HEALTH PROFESSIONALS ALLIED EMPLOYEES** | **15 - 100** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **208 Whitehorse Pike, Haddon Heights, NJ 08035** | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **02-11-2020**  Latest **02-11-2020**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. On or about February 11, 2020, I tried to file a grievance with the Union and was denied the right by Marcus Presley, Staff Representative.

II. Marcus Presley, Staff Representative, told me that the reason he did not want to file a grievance for me was that he didn't want to put the other union members in danger.

III. I believe that I have been discriminated against due to my national origin, Iranian, in violation of Title VII of VII of the Civil Rights Act of 1964, as amended, in that the union has represented Blacks and Whites with their grievances, but refused to file one for me.

Please see the attach emails.     Thank You!

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 12-11-2020 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |