IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PARASTU SHARIFI, | : | |
| | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| v. | : | No. 21-2873 |
| | : | |
| AMERICAN RED CROSS, et al., | : | |
| | : | |
| *Defendants*. | : | |

MEMORANDUM

**Kenney, J.**                                                                                                    **July 20, 2023**

Plaintiff Parastu Sharifi ("Plaintiff") brings this action against the American Red Cross ("Defendant" or "ARC"), alleging violations of the Fair Labor Standards Act ("FLSA") and related state law. Presently before the Court is Defendant's Motion for Summary Judgment (ECF No. 80), Plaintiff's Opposition to the Motion (ECF No. 83), and Defendant's Reply (ECF No. 84). For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 80) is granted. An appropriate Order will follow.

**I.      BACKGROUND**

Plaintiff was employed by Defendant as a mobile phlebotomist (or a "donor collections assistant") from September 2019 until her termination on February 11, 2020. ECF No. 33 ¶¶ 1, 8, 25; ECF No. 80-2, Defendant American Red Cross' Concise Statement of Material Facts ("CSMF").[1] Plaintiff was a member of the Local 5103 Health Professionals and Allied Employees AFT, AFL-CIO union (the "Union") during her employment. ECF No. 33 ¶¶ 1, 3. As a mobile

---

[1] Defendant notes that the parties have not submitted a statement of stipulated material facts because Defendant's counsel attempted to set up a time to confer with Plaintiff regarding undisputed material facts in preparation for Defendant's filing of a Motion for Summary Judgment, to which Plaintiff responded "Not so fast Mr Larroca, I really like your confidence." CSMF at 1 n.1; *see* ECF No. 78-2, Ex. B.

1

phlebotomist in the Penn-Jersey Region ("Region"), Plaintiff was assigned to different worksites throughout New Jersey and Eastern Pennsylvania, to which Plaintiff drove her own car. *Id.* ¶ 34.

During Plaintiff's employment, compensation of the Union's employees was governed by a collective bargaining agreement negotiated by the Union and Region. *See* ECF No. 80-5, Ex. 2 ("Agreement"). Section 11.6 of the Agreement indicated that all employees would be compensated for overtime, at the rate of time and one-half the regular straight-time hourly rate for all hours worked in excess of 40 hours in one week. *Id.* The same section of the Agreement stated that the travel time of employees hired after September 30, 2011 would not be considered hours worked for purposes of calculating overtime. *Id.*

Section 33 of the Agreement provided that the Region would reimburse employees not regularly assigned to fixed sites for "business-related miles driven in excess of 20 miles per day in a personal vehicle" and for tolls paid in connection with reimbursed mileage. *Id.* Travel time compensation for the week was calculated at a rate of 1.5 minutes per mile, minus up to a maximum of one half-hour of travel per day. *Id.* When determining the employee's compensation for the week, any compensable travel time would offset any hours otherwise payable for the week under Section 11.4[2], and if the sum was greater than 40 hours, the employee would be paid at straight time and at time and one-half for hours eligible for overtime payment. *Id.* That is, according to the Agreement, travel time was not counted toward "worked time" but rather "counted for the purpose of calculating guaranteed daily hours." ECF No. 80 at 3. Plaintiff's allegations regarding travel compensation concern travel to and from Plaintiff's worksite—that is, Plaintiff's commute time.

---

[2] Section 11.4 provided the following: The normal workday shall be eight (8) hours of work or such lesser amount of time as might be required to perform mobile functions for employees assigned to mobiles and fixed sites. An employee who works a shift on a blood collection operation shall be guaranteed eight (8) hours of pay.

Section 34 of the Agreement provided that the Region would reimburse employees regularly assigned to mobile sites for parking expenses up to a maximum of $125 per fiscal year. ECF No. 80-5, Ex. 2. In addition, each employee could elect before the start of each calendar year to have an additional $75 available for parking reimbursement that calendar year or have the $75 added to their health savings account. *Id.* Further, this section provided that parking expenses "reasonably incurred in the performance of official duties, and, where feasible, approved in advance by a supervisor, shall be reimbursed upon receipt of a signed, itemized voucher and receipts submitted in accordance with published deadlines." *Id.*

## II.  PROCEDURAL HISTORY

### A.  First Amended Complaint

Plaintiff, acting *pro se*,[3] commenced this action on June 24, 2021 against Defendant, as well as against former Individual Defendants and former Defendant Health Professional & Allied Employees a/k/a Labor Union Local 5103 ("HPAE"), the collective bargaining representative for employees employed by Defendant American Red Cross. In her original Complaint, Plaintiff asserted the following claims: (1) violation of the FLSA and the Pennsylvania Minimum Wage Act ("PMWA") (against Defendants ARC and HPAE); (2) intentional discrimination and wrongful

---

[3]  On August 12, 2021, Plaintiff filed a Motion for Appointment of Counsel. ECF No. 8. On August 16, 2021, the Court (1) ordered the Clerk of Court to attempt to appoint counsel from the Court's Attorney Panel for Pro Se Plaintiffs in employment discrimination cases by placing the case on the Court's extranet site for review by Panel attorneys; and (2) placed the case in suspense for 60 days. ECF No. 9. The case was removed from suspense on October 22, 2021.
 On January 13, 2022, the Court ordered the Clerk of Court to attempt to appoint counsel from the Court's Attorney Panel for Pro Se Plaintiffs in employment discrimination cases by placing the case back on the Court's extranet site for review by Panel attorneys. ECF No. 24. On April 20, 2022, because no attorney from the Employment Panel had volunteered to accept appointment in the case, the Court ordered that the case be removed from the Employment Panel. ECF No. 43.

discharge in violation of Title VII of the Civil Rights Act of 1964 (against Defendant ARC); (3) invasion of privacy in violation of Federal Wiretapping Act and related state law (against Defendants ARC and Individual Defendants); and (4) intentional and negligent infliction of emotional distress (against all Defendants). *See* ECF No. 1.

After all original Defendants filed motions to dismiss on October 18, 2021 (ECF Nos. 13, 14), Plaintiff filed a First Amended Complaint (ECF No. 16) on November 2, 2021. In that First Amended Complaint, Plaintiff amended the second cause of action to include violations of Title I of the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967 ("ADEA"), and 42 U.S.C. § 1981(a) ("Equal rights under the law") against all Defendants; and asserted the third cause of action (invasion of privacy) against all Defendants. *See* ECF No. 16 at 11, 13. Defendants again moved to dismiss. *See* ECF Nos. 19, 20.  The Court granted in part and denied in part (ECF No. 23) on January 12, 2022, dismissing Count One against ARC without prejudice and against HPAE with prejudice; dismissing the Title VII claim against HPAE without prejudice and against the Individual Defendants with prejudice; dismissing the ADEA claim against ARC without prejudice, and against HPAE and the Individual Defendants with prejudice; dismissing the Section 1981 claim against all Defendants without prejudice; dismissing Count Three against all Defendants with prejudice; and dismissing Count Four against all Defendants with prejudice.

      **B.**     **Second Amended Complaint**

Plaintiff filed a Second Amended Complaint on March 23, 2022 (ECF No. 33) against only Defendants ARC and HPAE after which Defendants moved to dismiss on April 6, 2022. ECF Nos. 41, 42. Plaintiff in Count One of the Second Amended Complaint asserted violations of the FLSA and PMWA against Defendant ARC; and in Count Two asserted violations of Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, the ADEA, and Section 1981 against

4

Defendants ARC and HPAE—despite the Court having already dismissed the ADEA claim against HPAE with prejudice. On August 1, 2022, the Court dismissed Count Two with prejudice as to both Defendants ARC and HPAE and terminated Defendant HPAE as a party, leaving Plaintiff's claim under the FLSA and related state law as the sole remaining claim on the matter. ECF No. 53.

On November 14, 2022, Defendant filed a motion to compel Plaintiff to provide supplemental responses to Defendant's discovery requests. ECF No. 66. The Court granted the Motion to Compel. ECF No. 67. On December 19, 2022, Defendant filed a Motion for Sanctions, stating that Plaintiff had failed to provide the documents and responses ordered by the Court. ECF No. 72. The Court subsequently ordered Plaintiff to appear for her scheduled deposition, produce any relevant documents, and supplement her interrogatory responses. ECF No. 74. On January 12, 2023, Defendant filed a second Motion for Sanctions, stating that Plaintiff had failed to produce any documents, supplement her responses to document requests, inform Defendant if she had no documents to produce, or supplement her interrogatory responses. ECF No. 76. The Court denied the Motion on February 9, 2023, "accept[ing] that Plaintiff has no other relevant documents or information to provide Defendant other than what she has provided and other than what she testified to in her deposition and as such will not be able to supplement the record in her response to the Motion for Summary Judgment." ECF No. 82. On January 19, 2023, Plaintiff filed a Motion to Compel, stating that Defendant had not provided requested documents. ECF No. 77. The Court denied this Motion on February 8, 2023. ECF No. 81.

  **C.**  **Sole Remaining Count**

As to the sole remaining count, Plaintiff alleges that Defendant did not appropriately compensate Plaintiff for travel time or overtime compensation, and requests that Defendant "pay

5

for unpaid wages, lost traveling time, unpaid overtime wages." ECF No. 33 ¶¶ 27, 41, 46. Plaintiff alleges that the Agreement between the Union and Region violated the travel time and overtime provisions of the FLSA (citing 29 U.S.C. § 207(a)(1) and 29 U.S.C. § 216(b)) and Title 34 of Pennsylvania Statutes, Codes, and Regulations because the principles of overtime and travel time compensation "were not being applied equally and uniformly among all employees and union members." ECF No. 33 ¶ 38—41. As discussed, *supra*, under the Agreement negotiated by the Union and Region, the travel time of employees hired after September 30, 2011 was not considered hours worked for purposes of calculating overtime.

Plaintiff's allegations regarding travel compensation concern travel to and from Plaintiff's worksite—that is, Plaintiff's commute time. For example, Plaintiff alleges that newly-hired phlebotomists, referring to those hired after September 30, 2011, "would never get paid for the actual time spent getting to their destination nor they would get paid overtime for hours worked on the site in addition to the required time spent traveling to and from the assigned location." *Id.* ¶ 48.

As another example, Plaintiff alleges that newly-hired phlebotomists were paid one hour of work time for every 50 miles driven, in addition to $0.54—$0.58 per mile, adding that "even though [the] majority of streets in New Jersey and Pennsylvania have a speed limit of 25-45 mph, or they are congested with regular traffic, so those extra times spent in Traffic or driving on streets with lower Speed Limit would be on the phlebotomist's own time, even though ARC was the one requiring them to drive to a different locations on [a] daily basis." *Id.* ¶ 43. Plaintiff refers to a day on which a 40-mile drive to her assigned worksite took one hour and 30 minutes, and that after deducting 10 miles from the 50-mile travel compensation mark, Plaintiff "would only receive

6

approximately 36 minutes of straight pay when in fact she had to at least spend 1 hour and 30 minutes driving to get to her assigned destination." *Id.* ¶ 44.

Plaintiff alleges that "[f]rom the total actual miles driven on the daily basis, 20 miles would be considered unpaid for the purpose of paid mileage and paid travel time for all the phlebotomists." *Id.* ¶50. Plaintiff explains that, for example, if an employee drove 100 miles, Defendant would compensate for 80 miles. *Id*. Plaintiff argues that since Defendant "deducted 10 miles each way (20 miles in total) for the purpose of this act as the '[t]ravel to and from home miles,' [Defendant] should be responsible for all other time the phlebotomists would spend to get to the final destination after these 10 miles were driven by the phlebotomists." *Id.* ¶ 51.

In addition to Plaintiff's claims regarding travel time, Plaintiff also alleges that she was not compensated for work-related phone calls with Defendant's supervisory employees on days that Plaintiff did not work. *Id.* ¶ 31.

### D. Motion for Summary Judgment

#### 1. Defendant's opening brief

Defendant argues that it is entitled to summary judgment for two reasons: first, Plaintiff has not identified with any specificity in the discovery process the wages claimed for commuting to work and work-related phone calls; and second, Plaintiff is unable to show that the law entitles Plaintiff to compensation for traveling to and from work. ECF No. 80 at 2.

As to Plaintiff's lack of evidence, Defendant points to Plaintiff's inability at deposition to identify any mobile site to which she was assigned for which she sought unpaid wages. *Id*. at 5-6. Defendant also points to Plaintiff's failure to provide any document on which Plaintiff recorded wages or time allegedly unpaid by Defendant (*id*. at 6) and Plaintiff's failure to provide responses to Defendant's interrogatories regarding the computation of Plaintiff's alleged damages. *Id.* at 7.

Defendant argues that Plaintiff has provided no documents to support her claims that Defendant violated the FLSA or related state law. *Id.* at 6.

As to Plaintiff's legal claims, Defendant argues that Plaintiff seeks compensation for travel that is not compensable under the Portal-to-Portal Pay Act of the FLSA (29 U.S.C. § 254(a)) or the PMWA (43 Pa. Stat. Ann. § 333.104 (a)). *Id.* at 9. Defendant reasons that "Plaintiffs' interpretation is that because the union and Defendant negotiated a payment for some of her travel time based on mileage, such an arrangement was converted to a requirement under law that she be paid for commuting." *Id.* at 13. Defendant asserts that Plaintiff was paid travel time, for every paycheck she received, for the mileage that Plaintiff entered into Defendant's time system pursuant to the Agreement. SMF ¶ 13; *see* ECF No. 80-4, Ex. 1 (Russ Affidavit) ¶ 12; ECF No. 80-6, Ex. 3 (paystubs).

      2.      **Plaintiff's opposition**

In her response brief, Plaintiff first points to a Workday timesheet from the week of September 7, 2019, showing that the "grand total" of hours worked consists of "regular hours" and "travel utility." ECF No. 83 at 5 (citing ECF No. 83-3, Ex. 5). Plaintiff argues that she was not correctly compensated for travel time under the FLSA and PMWS, and points to Section 33(d) of the Agreement which provides that an employee's travel time is calculated for purposes of overtime. ECF No. 83 at 7-8. Plaintiff argues that Section 11.6 of the Agreement, which excludes employees hired after September 30, 2011 from having travel time calculated as hours worked for purposes of overtime, violates the FLSA and PMWS as it contradicts Section 33(d). *Id.* at 4-7. Plaintiff argues that her travel time to and from work is compensable because, according to the Department of Labor, "the time spent by an employee in travel as part of their principal activity is

work time and must be counted as hours worked," and mobile phlebotomists "travel[] to different sites a[s] part of the mobile phlebotomists' principle activity." *Id.* at 11.

Plaintiff also states that the Agreement provided that "[t]he Region shall make prior arrangement for free parking for employees whenever possible at mobile sites," but that "[t]his [p]rovision of the [c]ontract was barely honored." *Id.* at 9. Plaintiff argues that Defendant did not compensate Plaintiff for 0.54 hours of "actual time" worked, pointing to the September 7, 2019 timesheet and Plaintiff's own calculations on the sheet. *Id.* at 10 (citing ECF No. 83-3, Ex. 5). Plaintiff also argues that she was not compensated for work-related phone calls initiated by her immediate supervisor. *Id.* at 10-11.

## III. **LEGAL STANDARD**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Indeed, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Owens Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. The non-movant opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

When determining the existence of a genuine issue of material fact, a court must "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## IV.    DISCUSSION

For the reasons set forth below, Defendant is entitled to summary judgment on the single remaining cause of action in this matter.

### A.    Plaintiff has not come forward with evidence sufficient to show a genuine issue of material fact

Defendant has met its initial burden of identifying an absence of genuine issue of material fact, and Plaintiff has not met her burden of providing evidence with detail sufficient to show a genuine issue of fact that could result in a reasonable jury returning a verdict for Plaintiff.

An employee bringing claims under the FLSA "has the burden of proving that [they] performed work for which [they were] not properly compensated" by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). An employee's allegations unsupported by any payroll records, timesheets, or other documentary evidence cannot survive summary judgment. *See Sniscak v. Borough of Raritan*, 86 F. App'x 486, 487 (3d Cir. 2003).

Plaintiff here has failed to put forth any evidence showing the amount and extent of the alleged uncompensated work at issue, even as a matter of just and reasonable inference. To be sure, this finding does not rely only on Plaintiff's inability at deposition to identify any mobile site to which she was assigned during her employment for which she sought unpaid wages. *See* ECF No. 80 at 5-6; *see also* ECF No. 83 at 9-10. Rather, the Court finds that there is no genuine issue of material fact, Plaintiff having failed to provide payroll records, timesheets, documentary evidence, or supplementary interrogatory responses requested by Defendants and ordered by this Court on numerous occasions. *See* ECF Nos. 67, 74.

Plaintiff failed to provide documents responsive to Request for Production No. 1 in which Defendant requested "[d]ocuments created or maintained by [Plaintiff] recording time worked."

11

ECF No. 66 at 2. Plaintiff's response to this request refers to exhibits 2, 3, 4, 5, 8 and 30 of her February 11, 2022 Motion for Reconsideration, which are nonresponsive to the request as they include the following: "two Google Map printouts of undated days Plaintiff alleges she drove during her employment; one printout for November 20, 2019; one document that appears to be a schedule for September 7-13, 2019; one document that purports to be call logs with her former supervisor on September 27, 2019 and October 1, 2019; and one photo of a car." ECF No. 66 at 3. Plaintiff also failed to provide any documents responsive to Request for Production No. 2 in which Defendant requested "[d]ocuments created or maintained by [Plaintiff] recording wages or other compensation paid or allegedly unpaid by the Defendant." *Id.* at 3. Plaintiff's response to this request was the same in substance as her response to Request No. 1, with the addition of referencing Exhibit 40 to her motion for reconsideration—an irrelevant email she sent to the Union. *Id.* at 3-4.

Plaintiff objected to Request for Production No. 5, in which Defendant requested "[a]ny statements from individuals with information relevant to [Plaintiff's] allegations in [Plaintiff's] First Cause of Action of the Second Amended Complaint, violation of the Fair Labor Standards Act ("FLSA"), or any alleged violation of applicable wage law," on the basis of attorney work product. *Id.* at 4.

In Request for Production No. 6, Defendant requested "[d]ocuments that [Plaintiff] rel[ies] on to support a claim of violation of the FLSA or state wage law." *Id.* Plaintiff failed to provide documents responsive to this request, stating that Defendant was "in possession of Plaintiff's work related records such as her schedules, site assignments, paychecks, workday." *Id.* In her response, Plaintiff then referenced the same exhibits to the Motion for Reconsideration as referenced in her response to Request No. 1. *Id*. at 4-5.

In Request for Production No. 7, Defendant requested "[a]ll other documents that you rely on to support the allegations in [Plaintiff's] First Cause of Action of the Second Amended Complaint, violation of the Fair Labor Standards Act ("FLSA"), or any alleged violation of applicable wage law." *Id.* at 5. Plaintiff failed to provide documents responsive to this request, again stating that Defendant was "in possession of Plaintiff's work related records such as her schedules, site assignments, documents named workday by ARC, and etc." *Id.* at 5. Plaintiff's response referenced the same six exhibits as in her response to Request Nos. 1 and 6.

As to the interrogatories, Plaintiff failed to supplement her responses to interrogatories asking Plaintiff to set forth computations of (1) each category of damages claimed, including applicable dates; amounts of claimed unpaid wages; and the method used for computation including the applicable rates and hours (Interrogatory No. 5); and (2) a computation of all alleged lost wages and unpaid overtime connected to the alleged compensable travel time claimed ("Interrogatory No. 9"). Plaintiff had objected to both interrogatories. *See* ECF No. 66 at 6-7; *see also* ECF No. 80-8, Ex. 5 (Plaintiff's Interrogatory Response) ¶¶ 5, 9.

The only additional response Plaintiff provided in response to the Court's Order (dated November 28, 2022) was in the form of irrelevant videos which did not satisfy the requirements of the Order. This production included the following irrelevant, non-responsive materials:

- A video "filmed through the front window of a vehicle that is moving slowly through congested traffic on an unknown highway while the speaker (presumably the Plaintiff) speaks about the conditions of traffic." ECF No. 72-3, Exhibit A at 1.
- A video "filmed in front of a door with a sign stating, "BLOOD DRIVE." The speaker (presumably the Plaintiff) stats [sic] that "BLOOD DRIVE" is the only sign she sees. At 00:01 a woman opens the door for the speaker." *Id.*
- A video filmed in front of a building near a parking lot, in which the speaker who is presumably the Plaintiff stated that she did not see any trucks, that she had called

13

- her manager who had not returned her call, and that she would text another individual for the location. *Id.* at 1-2.
- A video filmed through the front window of a moving vehicle on a highway showing that the driver is about to take the exit to Somerville on I-287 South. *Id.* at 2.
- A screenshot of six video thumbnails showing nondescript parks and sidewalks in the area of Jersey City. *Id.* at 3.
- A screenshot of three additional video thumbnails of nondescript highways in the area of Morris Township, New Jersey, Woodbridge Township, Summit, which Defendant notes "[p]resumably . . . purport to show that Plaintiff was unable to find the job site." *Id.* at 4. This screenshot also included images of credit card charges for an airline flight, the Home Depot, and Wal-Mart—presumably unrelated to this matter. *Id.*
- A screenshot showing (1) three video thumbnails of nondescript parking lots or roads; (2) a photograph of a computer screen showing the address of St. Peter's Church in the Great Valley; and (3) a photograph of a truck near a booth with a stop sign, all either taken or cataloged on 10/3/19 in the area of Sussex County Community College, East Windsor, NJ. *Id.* at 5.

Moreover, while the parties disagree as to whether Plaintiff has produced her New Jersey Turnpike Toll receipts (see ECF No 66 at 3; ECF No. 76 at 2; ECF No. 79 at 2), even if Plaintiff has produced these toll receipts, this alone would not be enough to show the amount and extent of Plaintiff's alleged uncompensated work at issue, even as a matter of just and reasonable inference.

  **B. Defendant is not legally required to compensate employees for travel to and from work**

Even if Plaintiff had put forth sufficient evidence of the time for which she seeks compensation (and she has not), Plaintiff seeks compensation for travel between home and work— travel that is not compensable under the Portal-to-Portal Pay Act of the FLSA (29 U.S.C. § 254(a)) or the PMWA (43 Pa. Stat. Ann. § 333.104 (a)). Because the PMWA includes an additional

requirement not included in the FLSA that the travel itself must be "part of the duties of the employee," the FLSA and PMWA must be interpreted separately. *Espinoza v. Atlas R.R. Constr., LLC*, 657 F. App'x 101, 105 (3d Cir. 2016).

### 1.    FLSA

Plaintiff's allegations of uncompensated time all relate to time for travel between Plaintiff's home and work. *See* ECF No. 33 ¶ 46 (alleging that Defendant did not compensate Plaintiff for travel time or overtime for "the total hours worked and spent traveling to and from assigned locations."). The Portal-to-Portal Act of 1947 provides, in part, that an employer need not compensate an employee for "traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1). Employers are not required to compensate employees for ordinary travel time from home to work (i.e., time spent commuting). 29 C.F.R. § 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime."); *see also Smith v. Allegheny Techs., Inc.*, 754 F. App'x 136, 140 (3d Cir. 2018) (noting that courts have routinely held that commute time is non-compensable under the FLSA).

Plaintiff's arguments under this claim are rooted in the theory that because Defendant compensated some employees for more than what is required by law, that Defendant was required to compensate all employees for all travel time. For instance, Plaintiff concedes in her Second Amendment Complaint that "[t]he Portal-to-Portal Act makes clear that employers do not need to pay employees for time spent traveling from their homes to their workplace before the start of the workday or traveling from their workplace to their homes after the workday is over," but continues:

"yet, since the ARC deducted 10 miles each way (20 miles in total) for the purpose of this act as the 'Travel to and from home miles,' they should be responsible for all other time the phlebotomists would spend to get to the final destination after these 10 miles were driven by the phlebotomists." ECF No. 33 ¶ 51. Plaintiff claimed the same at her deposition, stating her "claim is that American Red Cross should've fully paid [her] for any time that [she] had spent traveling after that ten miles, from that ten miles, that point to their assigned location," and the same for her travel from the assigned location to home. ECF No. 80-9, Ex. 6, Sharifi Dep. 39:6-11, 41:7-13.

Plaintiff makes a similar argument regarding the provisions of the Agreement negotiated by the Union and Region. As discussed, *supra*, Section 11.6 of the Agreement indicates that all employees shall be compensated for overtime, but that the travel time of employees hired after September 30, 2011 is not considered hours worked for purposes of calculating overtime. *See* ECF No. 80-5, Ex. Plaintiff alleges that because the principles of overtime and travel time compensation "were not being applied equally and uniformly among all employees and union members based on the date of hiring due to the newly signed union contract dated October of 2018," she did not receive appropriate overtime or travel time compensation. ECF No. 33 ¶¶ 40-41. That is, Plaintiff argues that because the Union and Region negotiated payment for senior employees' travel time (not required by law), such payment is required for all employees. However, that the Union and Region negotiated a contract that requires Defendant to pay for certain travel time beyond what is required by the FLSA does not mean that Plaintiff is entitled to compensation for the travel time between home and work.

### 2. PMWA

As to Plaintiff's state law claim, the PMWA provides that "[e]very employer shall pay to each of his or her employee's wages for all hours worked." 43 Pa. Stat. Ann. § 333.104. The term "hours worked" is defined as "time during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed work place, time spent in traveling as **part of the duties** of the employee during normal working hours and time during which an employee is employed or permitted to work." 34 Pa. Code § 231.1 (emphasis added).

"[F]or travel to be considered a duty of employment, it cannot merely be a necessary means of accessing the employee's job; it must, instead, be an integral feature of the job itself." *Espinoza v. Atlas R.R. Constr., LLC*, 657 F. App'x 101, 106–07 (3d Cir. 2016). In *Espinoza*, the Third Circuit found that Plaintiff "failed to allege any facts showing that his travel was a duty of his employment as defined under the PMWA" because his factual allegations that his job required him to travel long distances from his home to various worksites "describe little more than a basic commute; all employees must arrive at their jobs before their shift begins and refusal to do so understandably leads to termination." *Id.* at 107. The Third Circuit further reasoned that the plaintiff there "did not allege that he performed any work for the company during his travel time nor any other facts showing that his travel was part of the duties of his employment."

The same reasoning applies here. Plaintiff's claims of uncompensated travel time relate to her commute to and from a single worksite in a day and occurred only before and after normal working hours. As such, this travel was not part of Plaintiff's duties and is not compensable under the PMWA.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 80) is granted. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**